| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BERKELEY | ) | |
| | ) | |
| GENE VICTOR MOORE, | ) | CIVIL ACTION COVERSHEET |
| **Plaintiff(s)** | ) | 2017-CP - 08- 2476 |
| | ) | |
| vs. | ) | |
| | ) | |
| BASS PRO OUTDOOR WORLD, LLC, individually, and d/b/a BASS PRO SHOPS, and BASS PRO SHOPS, | ) | |
| | ) | |
| **Defendant(s)** | ) | |

| | |
|---|---|
| Submitted By: David W. Whittington | SC Bar #:       010182 |
| Address: KNIGHT & WHITTINGTON, LLC | Telephone #:    (843) 821-9700 |
| 207 East Third North Street, Summerville, SC 29484 | Fax #:            (843) 821-0031 |
| | E-mail:          dwhittington@knightwhittington.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

### NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☒ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___-NI-____ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| | ☐ Other (299) _____ | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) _____ |
| ☐ Employment (180) | | ☐ Other (399) _____ | |
| ☐ Other (199) _____ | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500). | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) _____ | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |
| Special/Complex /Other | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers Compensation Settlement Approval (780) | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) _____ |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (799) _____ | |
| ☐ Other (699) _____ | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | | |
| ☐ Permanent Restraining Order (680) | | | |

Submitting Party Signature: _David Whitt (signature)_                     Date: _October 31, 2017_

SCCA / 234 (03/2016)                                    Page 1 of 2                    Exhibit A

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**     **You must comply with the Supreme Court Rules regarding ADR.**
                     **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                        )    FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY      )
                        )    CIVIL ACTION NO. 2017-CP-_____
.GENE VICTOR MOORE,     )
                        )
        Plaintiff,      )
                        )
    versus              )           **SUMMONS**
                        )
BASS PRO OUTDOOR WORLD, LLC,  )
individually, and d/b/a BASS PRO SHOPS, )
and BASS PRO SHOPS,     )
                        )
        Defendants.     )
_____)

TO THE DEFENDANTS ABOVE NAMED:

    YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in this

action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said

Complaint on the below subscribed attorneys at 207 East Third North Street, Summerville, SC 29483

within thirty (30) days after the service hereof exclusive of the day of such service; and if you fail to

answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for

the relief demanded in this action and judgment by default will be rendered against you in the relief

demanded in the Complaint.

                                KNIGHT & WHITTINGTON, LLC

                        By: _____
                                DAVID W. WHITTINGTON
                                207 East Third North Street
                                P.O. Box 280
                                Summerville, SC 29484
Summerville, SC                 (843) 821-9700
                                ATTORNEYS FOR PLAINTIFF
Dated: October 31, 2017

STATE OF SOUTH CAROLINA          )          IN THE COURT OF COMMON PLEAS
                                 )          FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY               )          CASE NO.: 2017-CP-08-

GENE VICTOR MOORE                )
                                 )
            Plaintiff,           )
                                 )
      versus                     )          **COMPLAINT**
                                 )          **(Jury Trial Requested)**
BASS PRO OUTDOOR WORLD, LLC,     )
individually, and d/b/a BASS PRO SHOPS, )
and BASS PRO SHOPS,              )
                                 )
            Defendants.          )
                                 )
_____)

COMES NOW the Plaintiff, by and through undersigned counsel, complaining of the

Defendants and alleges as follows:

1.      The Plaintiff is a citizen and resident of the County of Berkeley, State of South

Carolina.

2.      The Defendant, Bass Pro Outdoor World, LLC, is, upon information and belief, a

limited liability company formed in a state other than the State of South Carolina, but maintains agents

in the State of South Carolina and conducts business in the County of Berkeley, State of South

Carolina.

3.      Upon information and belief, Bass Pro Outdoor World, LLC owns and/or operates Bass

Pro Shops.

4.      Upon information and belief, Bass Pro Shops is an entity organized and existing under

the laws of a state other than the State of South Carolina but maintains agents in the State of South

Carolina and conducts business in the State of South Carolina and in Berkeley County.

1

5.    Upon information and belief, Bass Pro Shops and/or Bass Pro Outdoor World, LLC, (hereinafter "the Defendants") prior to the date of Plaintiff's injury, acquired ownership of Global Manufacturing Company and the API brand tree stands.

6.    Upon information and belief, the Defendants are, and at all times material hereto were, engaged in the business of designing, manufacturing, marketing and selling hunting equipment, including but not limited to, climbing tree stands.

7.    Defendants market its climbing tree stands as being "certified" by the Tree Stand Manufacturers Association ("TMA"), thereby implying to the hunting community that its tree stands are properly designed and manufactured, and in some way, more safe than those not certified by TMA.

8.    The Defendants knew, or should have known, that millions of hunters hunt deer every year during hunting season and the most popular method for hunting deer is to sit in an elevated tree stand.

9.    The Defendants knew, or should have known, that tree stand failures have resulted in numerous injuries and deaths of hunters.

10.    The Defendants knew or should have known that more hunters are injured and killed every year as a result of falls from tree stands than as a result of gun shot wounds.

11.    The Defendants knew or should have known that falls associated with hunting tree stands are common and typically result in high impact injuries requiring operative intervention, permanent injuries, and/or death in many cases.

12.    The Defendants knew or should know that so-called "safety" harnesses or "suspension relief systems" result often in unconsciousness or death from blood pooling when used by hunters.

13.    The Defendants know, that most hunters do not use the so-called "safety" harnesses or "suspension relief systems" while climbing trees because of hunters' beliefs that climbing tree stands are designed for climbing and therefore, will not become disconnected from the trees while

2

climbing; hunters belief that such harnesses do not aid them in climbing; that the use of harnesses while climbing, in fact, complicates the process due to their cumbersome nature; hunters belief that the safety harness is not necessary to keep them connected to the tree during climbing; hunters' concerns about the reliability of the "safety" harness or safety "suspension relief system"; and the possibility of the hunter suffering from a loss of consciousness, brain damage, neurological injury and/or death from blood pooling associated with the use of the harness.

14.    On or about November 30, 2014, the Plaintiff purchased from the Defendants an API Crusader Climbing Tree Stand, for which he paid the sum of $169.97 through Bass Pro Shops on-line website (http://www.basspro.com).

15.    Sometime after November 30, 2014, the API Crusader Climbing Tree Stand ordered by the Plaintiff from the Defendant Bass Pro Shop was delivered to Plaintiff by the defendants at his residence in Berkeley County.

16.    On or about November 8, 2015, the Plaintiff was deer hunting in Illinois. He was using the API Crusader Climbing Tree Stand in the manner that the product was intended to be used. After ascending the tree to the point where he intended to hunt, the Plaintiff was in the process of attaching his safety harness to the tree, when the tree stand became disengaged from the tree and slipped down approximately 1-2 feet before it re-engaged the tree. Upon re-engaging the tree, the "secured cap bolt" snapped and certain welds on the stand failed, causing the Plaintiff to fall to the ground and suffer serious and permanent injuries.

## FIRST CAUSE OF ACTION
### (Strict Liability)

17.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-16 as if repeated herein verbatim.

18.    The Defendants designed, fabricated, produced, manufactured, assembled, developed,

3

tested, distributed, sold, warranted and placed into the stream of commerce a defective and unreasonably dangerous product, specifically, the API Crusader Climbing Tree Stand, knowing that the subject tree stand would reach consumers without substantial change in its condition, and that, at the time the subject tree stand left the Defendants' control it was defective and unreasonably dangerous to consumers such as the Plaintiff.

19.    The Defendants knew or should have known that the ultimate users, hunters, and/or consumers would not be able to properly inspect the climbing tree stand for defects and dangerous conditions, and that such defects would be beyond the capabilities of such persons, including the Plaintiff to comprehend.

20.    On or about November 8, 2015, the subject API Crusader Climbing Tree Stand was being used in Illinois for the purpose for which it was intended, marketed and sold.

21.    The API Crusader Climbing Tree Stand in question was defective and unreasonably dangerous because of the way it was designed and manufactured.

22.    The API Crusader Climbing Tree Stand was defective and unreasonably dangerous because  the Defendants failed to use a feasible and reasonably available alternative design; specifically the Defendants could have designed the "secured cap bolt" (which is used to secure the "foot section supports" to the "foot section" of the stand), to attach to the foot section of the stand from the side of the foot section rather than from the top of the foot section, as was the design on the API Crusader tree stand purchased by the Plaintiff. The defective design created an unreasonable and dangerous condition to its users, including the Plaintiff.

23.    . The subject API Crusader Climbing Tree Stand was also defective and unreasonably dangerous because the "secured cap bolt" used to attach the "foot section supports" of the tree stand to the "foot section" of the tree stand was insufficient in strength and was defectively manufactured and/or designed so as to create an unreasonable and dangerous condition to its users, including the

4

Plaintiff.

24.    The subject API Crusader Climbing Tree Stand was also defective and unreasonably dangerous because the welds used in the construction of the stand were of poor quality and workmanship, and insufficient in strength, and were otherwise defective in manufacture and/or design so as to create an unreasonable and dangerous condition to its users, including Plaintiff.

25.    The Defendants failed to adequately test its climbing tree stands and/or its components before, during, and after the design, production, manufacture and sale of the subject tree stand to the public and/or knowingly placed a dangerously designed and manufactured tree stand into the stream of commerce.

26.    The Defendants also rendered the API Crusader Climbing Tree Stand unreasonably dangerous by failing to adequately warn consumers about the hazards of using the climbing tree stand with defective and/or inadequately designed, tested and manufactured components.

27.    As a direct and proximate result of the conduct, acts or omissions of the Defendants, the Plaintiff has and will continue to suffer injuries and damages including but not limited to medical bills and treatment, loss of enjoyment of life, pain and suffering, mental anguish and emotional distress, both past and future due to his permanent injuries. In addition, Plaintiff lost revenues and had an increase in expenses in the operation of his business, which upon information and belief caused him to suffer a loss of income.

28.    Plaintiff is informed and believes that he is entitled to a judgment against the Defendants for a sum sufficient to compensate him for his damages, both actual and punitive, in an amount to be determined by the trier of fact.

### SECOND CAUSE OF ACTION
### (Negligence)

29.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-28

5

as if repeated herein verbatim.

30.     At all times relevant hereto, the Defendants owed the general public, including the Plaintiff, a duty to design, manufacture, market, and sell only such climbing tree stands as were not defective and/or unreasonably dangerous for use by the consumers, including Plaintiff.

31.     The Defendants breached their duty to Plaintiff by, designing, manufacturing, marketing and selling a climbing tree stand, including specifically the API Crusader Climbing Tree Stand in a defective and unreasonably dangerous condition in that the "secured cap bolt" was not designed to be placed in an appropriate position and was not of sufficient strength either by way of design and/or manufacturing; that the defective condition of the "secured cap bolt" and the welds in the stand itself caused the tree stand to fail which caused the Plaintiff to fall to the ground, suffering injury and damages as previously alleged.

32.     That the Defendants were negligent, careless, reckless, willful and wanton in the following particulars:

(a)     In failing to properly design the tree stand;

(b)     In manufacturing a defective climbing tree stand, including but not limited to its components;

(c)     In failing to properly test the climbing tree stand prior to its sale to the Plaintiff;

(d)     In failing to properly inspect the tree stand in question prior to its sale to determine whether any defects existed;

(e)     In failing to warn consumers about the defective conditions of the tree stand;

(f)     In failing to foresee and take into account the reasonable and expected forces which would be placed on climbing tree stands during its use by consumers, including the Plaintiff;

6

(g)    In designing the tree stand such that the "secured cap bolt" was attached to the "foot section" of the tree stand from the top rather than the side of the foot section of the tree stand;

(h)    In designing the API Crusader Climbing Tree Stand to be manufactured with a "secured cap bolt" that was of insufficient strength or other characteristics such that it could not withstand the forces reasonably expected to be present when using the tree stand;

(i)    In manufacturing a defective "secured cap bolt" for use in the construction of the API Crusader Climbing Tree Stand in that the secured cap bolt" was not of sufficient strength for the use to which it was intended;

(j)    In designing the foot section of the API Crusader Climbing Tree Stand to be manufactured with welds that were of insufficient strength or other characteristics such that the foot section could not withstand the forces reasonably expected to be present when using the tree stand ;

(k)    In failing to test or otherwise inspect the "secured cap bolt" or the "foot section" of the tree stand in question prior to sale to the Plaintiff to determine whether the "secured cap bolt" and "foot section" were of sufficient strength for the purpose to which they were intended;

(l)    In failing to warn the Plaintiff of the defective and unreasonably dangerous condition of the Defendant's product after its sale to the Plaintiff;

(m)    In such other and further ways the evidence may establish at the trial of the case.

33.    The Plaintiff, as a direct and proximate result of the Defendants' negligence, carelessness, recklessness, willfulness and wantonness, Plaintiff suffered damages both past and future

7

as follows:

      (a)    Medical bills for treatment of his injuries;

      (b)    A loss of enjoyment of life;

      (c)    Pain and suffering;

      (d)    Mental anguish and emotional distress;

      (e)    A loss of revenues and an increase in expenses in his business which upon information and belief has caused him to lose income.

## THIRD CAUSE OF ACTION
### (Breach of Warranty)

34.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-33 as if repeated herein verbatim.

35.    The Defendants warranted, both expressly and impliedly, that its climbing tree stands, including the subject API Crusader Climbing Tree Stand, was of merchantable quality, fit for the ordinary purpose for which it was sold, and that it was fit for its intended purpose.

36.    That the Defendants are aware the consumers rely on its representations regarding its climbing tree stands safety when choosing whether or not to buy the Defendants' products.

37.    Because of the defective and unreasonably dangerous design and/or manufacture of the API Crusader Climbing Tree Stand by the Defendants as previously alleged, the API Crusader tree stand was not of merchantable quality, fit for the ordinary purpose for which it was sold, nor was it fit for its intended purpose.

38.    That the defective and unreasonably dangerous condition of the subject API Crusader Climbing Tree Stand, as previously alleged, constituted a breach of the Defendants' express and implied warranties.

39.    As a direct and proximate result of the conduct, acts or omissions of the Defendants, the Plaintiff suffered injuries and damages as previously alleged in paragraphs 27 and 33.

8

40.    That the Plaintiff is afforded and believes he is entitled to a judgment against the Defendants in a sum sufficient to compensate him for his damages, both actual and punitive, in an amount to be determined by the trier of fact.

WHEREFORE, the Plaintiff prays for judgment against the Defendants on each of his causes of action for actual and punitive damages, for the costs of this action, and for such other and further relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED

KNIGHT & WHITTINGTON, LLC

BY: _____

DAVID W. WHITTINGTON
dwhittington@knightwhittington.com
Matthew T. Douglas
mdouglas@knightwhittington.com
207 East Third North Street
Summerville, SC 29483
P: (843) 821-9700
F: (843) 821-0031

BY: _____

RUSSELL D. HILTON
russ@rhiltonlaw.com
104 South Pine Street
Summerville, SC 29483
P: (843) 376-5524

ATTORNEYS FOR PLAINTIFF

Summerville, South Carolina

Dated: October 31 2017

9

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br><br>COUNTY OF BERKELEY )<br><br>GENE VICTOR MOORE,<br>            Plaintiff(s) )<br><br>vs. )<br><br>BASS PRO OUTDOOR WORLD, LLC, individually, and d/b/a BASS PRO SHOPS, and BASS PRO SHOPS, and GLOBAL MANUFACTURING COMPANY and G.M.C., LLC.<br>            Defendant(s) ) | IN THE COURT OF COMMON PLEAS<br><br>AMENDED<br>CIVIL ACTION COVERSHEET<br><br>2017-CP - 08- 2478 |

Submitted By: David W. Whittington
Address: KNIGHT & WHITTINGTON, LLC
207 East Third North Street, Summerville, SC 29484

SC Bar #:       010182
Telephone #:   (843) 821-9700
Fax #:         (843) 821-0031
E-mail:       dwhittington@knightwhittington.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
*\*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.      ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☒ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20____ -NI-____-____ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| | ☐ Other (299) _____ | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) _____ |
| ☐ Employment (180) | | | |
| ☐ Other (199) _____ | | ☐ Other (399) _____ | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| _____ | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) _____ | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |
| | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| | | ☐ Petition for Workers Compensation Settlement Approval (780) | |
| | | ☐ Other (799) _____ | ☐ Other (999) _____ |

| Special/Complex /Other | | |
|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | |
| ☐ Other (699) _____ | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | |
| ☐ Permanent Restraining Order (680) | | |

**Submitting Party Signature:** _____     **Date:** November 8, 2017

SCCA / 234 (03/2016)                                       Page 1 of 2

MARY P. BROWN CLERK OF COURT BERKELEY CO. 2017 NOV -8 PM 3 FILED

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

SCCA / 234 (03/2016)                                              Page 2 of 2

STATE OF SOUTH CAROLINA        )     IN THE COURT OF COMMON PLEAS
                               )     FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY             )
                               )     CIVIL ACTION NO. 2017-CP-08-2478
GENE VICTOR MOORE,             )
                               )
          Plaintiff,           )
                               )        **AMENDED**
       versus                  )        **SUMMONS**
                               )
BASS PRO OUTDOOR WORLD, LLC,   )
individually, and d/b/a BASS PRO SHOPS, )
and BASS PRO SHOPS, and GLOBAL )
MANUFACTURING COMPANY, and     )
G.M.C., LLC.,                  )
                               )
          Defendants.          )

TO THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in this

action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said

Complaint on the below subscribed attorneys at 207 East Third North Street, Summerville, SC 29483

within thirty (30) days after the service hereof exclusive of the day of such service; and if you fail to

answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for

the relief demanded in this action and judgment by default will be rendered against you in the relief

demanded in the Complaint.

KNIGHT & WHITTINGTON, LLC

By: _____
    DAVID W. WHITTINGTON
    207 East Third North Street
    P.O. Box 280
    Summerville, SC 29484
    (843) 821-9700
Summerville, SC
    ATTORNEYS FOR PLAINTIFF

Dated:  November __8__ , 2017

STATE OF SOUTH CAROLINA      )      IN THE COURT OF COMMON PLEAS
                             )      FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY           )         CASE NO.:   2017-CP-08-2478

GENE VICTOR MOORE            )
                             )
         Plaintiff,          )
                             )
         versus              )      **AMENDED COMPLAINT**
                             )      **(Jury Trial Requested)**
BASS PRO OUTDOOR WORLD, LLC, )
individually, and d/b/a BASS PRO SHOPS, )
and BASS PRO SHOPS, and GLOBAL )
MANUFACTURING COMPANY, and   )
G.M.C., LLC.,                )
                             )
         Defendants.         )
_____)

        COMES NOW the Plaintiff, by and through undersigned counsel, complaining of the

Defendants and alleges as follows:

        1.      The Plaintiff is a citizen and resident of the County of Berkeley, State of South

Carolina.

        2.      The Defendant, Bass Pro Outdoor World, LLC, is, upon information and belief, a

limited liability company formed in a state other than the State of South Carolina, but maintains agents

in the State of South Carolina and conducts business in the County of Berkeley, State of South

Carolina.

        3.      Upon information and belief, Bass Pro Outdoor World, LLC owns and/or operates Bass

Pro Shops.

        4.      Upon information and belief, Bass Pro Shops is an entity organized and existing under

the laws of a state other than the State of South Carolina but maintains agents in the State of South

1

Carolina and conducts business in the State of South Carolina and in Berkeley County.

5.      Upon information and belief, Global Manufacturing Company, and G.M.C., LLC, are corporations and/or a limited liability company organized and existing under the State of Minnesota and manufacturers products intended for sale in the State of South Carolina, in the County of Berkeley.

6.      Upon information and belief, Bass Pro Shops and/or Bass Pro Outdoor World, LLC, prior to the date of Plaintiff's injury, acquired ownership of Global Manufacturing Company and the API brand tree stands, therefore, all Defendants shall collectively hereinafter be referred to as "the Defendants".

7.      Upon information and belief, the Defendants are, and at all times material hereto were, engaged in the business of designing, manufacturing, marketing and selling hunting equipment, including but not limited to, climbing tree stands.

8.      Defendants market its climbing tree stands as being "certified" by the Tree Stand Manufacturers Association ("TMA"), thereby implying to the hunting community that its tree stands are properly designed and manufactured, and in some way, more safe than those not certified by TMA.

9.      The Defendants knew, or should have known, that millions of hunters hunt deer every year during hunting season and the most popular method for hunting deer is to sit in an elevated tree stand.

10.     The Defendants knew, or should have known, that tree stand failures have resulted in numerous injuries and deaths of hunters.

11.     The Defendants knew or should have known that more hunters are injured and killed every year as a result of falls from tree stands than as a result of gun shot wounds.

12.     The Defendants knew or should have known that falls associated with hunting tree stands are common and typically result in high impact injuries requiring operative intervention, permanent injuries, and/or death in many cases.

2

13.     The Defendants knew or should know that so-called "safety" harnesses or "suspension relief systems" result often in unconsciousness or death from blood pooling when used by hunters.

14.     The Defendants know, that most hunters do not use the so-called "safety" harnesses or "suspension relief systems" while climbing trees because of hunters' beliefs that climbing tree stands are designed for climbing and therefore, will not become disconnected from the trees while climbing; hunters belief that such harnesses do not aid them in climbing; that the use of harnesses while climbing, in fact, complicates the process due to their cumbersome nature; hunters belief that the safety harness is not necessary to keep them connected to the tree during climbing; hunters' concerns about the reliability of the "safety" harness or safety "suspension relief system"; and the possibility of the hunter suffering from a loss of consciousness, brain damage, neurological injury and/or death from blood pooling associated with the use of the harness.

15.     On or about November 30, 2014, the Plaintiff purchased from the Defendants an API Crusader Climbing Tree Stand, for which he paid the sum of $169.97 through Bass Pro Shops on-line website (http://www.basspro.com).

16.     Sometime after November 30, 2014, the API Crusader Climbing Tree Stand ordered by the Plaintiff from the Defendant Bass Pro Shop was delivered to Plaintiff by the defendants at his residence in Berkeley County.

17.     On or about November 8, 2015, the Plaintiff was deer hunting in Illinois. He was using the API Crusader Climbing Tree Stand in the manner that the product was intended to be used. After ascending the tree to the point where he intended to hunt, the Plaintiff was in the process of attaching his safety harness to the tree, when the tree stand became disengaged from the tree and slipped down approximately 1-2 feet before it re-engaged the tree. Upon re-engaging the tree, the "secured cap bolt" snapped and certain welds on the stand failed, causing the Plaintiff to fall to the ground and suffer serious and permanent injuries.

3

## FIRST CAUSE OF ACTION
### (Strict Liability)

18.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-16 as if repeated herein verbatim.

19.     The Defendants designed, fabricated, produced, manufactured, assembled, developed, tested, distributed, sold, warranted and placed into the stream of commerce a defective and unreasonably dangerous product, specifically, the API Crusader Climbing Tree Stand, knowing that the subject tree stand would reach consumers without substantial change in its condition, and that, at the time the subject tree stand left the Defendants' control it was defective and unreasonably dangerous to consumers such as the Plaintiff.

20.     The Defendants knew or should have known that the ultimate users, hunters, and/or consumers would not be able to properly inspect the climbing tree stand for defects and dangerous conditions, and that such defects would be beyond the capabilities of such persons, including the Plaintiff to comprehend.

21.     On or about November 8, 2015, the subject API Crusader Climbing Tree Stand was being used in Illinois for the purpose for which it was intended, marketed and sold.

22.     The API Crusader Climbing Tree Stand in question was defective and unreasonably dangerous because of the way it was designed and manufactured.

23.     The API Crusader Climbing Tree Stand was defective and unreasonably dangerous because the Defendants failed to use a feasible and reasonably available alternative design; specifically the Defendants could have designed the "secured cap bolt" (which is used to secure the "foot section supports" to the "foot section" of the stand), to attach to the foot section of the stand from the side of the foot section rather than from the top of the foot section, as was the design on the API Crusader tree stand purchased by the Plaintiff. The defective design created an unreasonable and

4

dangerous condition to its users, including the Plaintiff.

24.    The subject API Crusader Climbing Tree Stand was also defective and unreasonably dangerous because the "secured cap bolt" used to attach the"foot section supports" of the tree stand to the "foot section" of the tree stand was insufficient in strength and was defectively manufactured and/or designed so as to create an unreasonable and dangerous condition to its users, including the Plaintiff.

25.    The subject API Crusader Climbing Tree Stand was also defective and unreasonably dangerous because the welds used in the construction of the stand were of poor quality and workmanship, and insufficient in strength, and were otherwise defective in manufacture and/or design so as to create an unreasonable and dangerous condition to its users, including Plaintiff.

26.    The Defendants failed to adequately test its climbing tree stands and/or its components before, during, and after the design, production, manufacture and sale of the subject tree stand to the public and/or knowingly placed a dangerously designed and manufactured tree stand into the stream of commerce.

27.    The Defendants also rendered the API Crusader Climbing Tree Stand unreasonably dangerous by failing to adequately warn consumers about the hazards of using the climbing tree stand with defective and/or inadequately designed, tested and manufactured components.

28.    As a direct and proximate result of the conduct, acts or omissions of the Defendants, the Plaintiff has and will continue to suffer injuries and damages including but not limited to medical bills and treatment, loss of enjoyment of life, pain and suffering, mental anguish and emotional distress, both past and future due to his permanent injuries. In addition, Plaintiff lost revenues and had an increase in expenses in the operation of his business, which upon information and belief caused him to suffer a loss of income.

29.    Plaintiff is informed and believes that he is entitled to a judgment against the

Defendants for a sum sufficient to compensate him for his damages, both actual and punitive, in an amount to be determined by the trier of fact.

## SECOND CAUSE OF ACTION
### (Negligence)

30.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-28 as if repeated herein verbatim.

31.    At all times relevant hereto, the Defendants owed the general public, including the Plaintiff, a duty to design, manufacture, market, and sell only such climbing tree stands as were not defective and/or unreasonably dangerous for use by the consumers, including Plaintiff.

32.    The Defendants breached their duty to Plaintiff by, designing, manufacturing, marketing and selling a climbing tree stand, including specifically the API Crusader Climbing Tree Stand in a defective and unreasonably dangerous condition in that the "secured cap bolt" was not designed to be placed in an appropriate position and was not of sufficient strength either by way of design and/or manufacturing; that the defective condition of the "secured cap bolt" and the welds in the stand itself caused the tree stand to fail which caused the Plaintiff to fall to the ground, suffering injury and damages as previously alleged.

33.    That the Defendants were negligent, careless, reckless, willful and wanton in the following particulars:

(a)    In failing to properly design the tree stand;

(b)    In manufacturing a defective climbing tree stand, including but not limited to its components;

(c)    In failing to properly test the climbing tree stand prior to its sale to the Plaintiff;

(d)    In failing to properly inspect the tree stand in question prior to its sale to

6

determine whether any defects existed;

(e)     In failing to warn consumers about the defective conditions of the tree stand;

(f)     In failing to foresee and take into account the reasonable and expected forces which would be placed on climbing tree stands during its use by consumers, including the Plaintiff;

(g)     In designing the tree stand such that the "secured cap bolt" was attached to the "foot section" of the tree stand from the top rather than the side of the foot section of the tree stand;

(h)     In designing the API Crusader Climbing Tree Stand to be manufactured with a "secured cap bolt" that was of insufficient strength or other characteristics such that it could not withstand the forces reasonably expected to be present when using the tree stand;

(i)     In manufacturing a defective "secured cap bolt" for use in the construction of the API Crusader Climbing Tree Stand in that the secured cap bolt" was not of sufficient strength for the use to which it was intended;

(j)     In designing the foot section of the API Crusader Climbing Tree Stand to be manufactured with welds that were of insufficient strength or other characteristics such that the foot section could not withstand the forces reasonably expected to be present when using the tree stand ;

(k)     In failing to test or otherwise inspect the "secured cap bolt" or the "foot section" of the tree stand in question prior to sale to the Plaintiff to determine whether the "secured cap bolt" and "foot section" were of sufficient strength for the purpose to which they were intended;

(l)     In failing to warn the Plaintiff of the defective and unreasonably dangerous

condition of the Defendant's product after its sale to the Plaintiff;

(m)    In such other and further ways the evidence may establish at the trial of the

case.

34.    The Plaintiff, as a direct and proximate result of the Defendants' negligence,

carelessness, recklessness, willfulness and wantonness, Plaintiff suffered damages both past and future

as follows:

(a)    Medical bills for treatment of his injuries;

(b)    A loss of enjoyment of life;

(c)    Pain and suffering;

(d)    Mental anguish and emotional distress;

(e)    A loss of revenues and an increase in expenses in his business which upon
information and belief has caused him to lose income.

### THIRD CAUSE OF ACTION
### (Breach of Warranty)

35.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-33

as if repeated herein verbatim.

36.    The Defendants warranted, both expressly and impliedly, that its climbing tree stands,

including the subject API Crusader Climbing Tree Stand, was of merchantable quality, fit for the

ordinary purpose for which it was sold, and that it was fit for its intended purpose.

37.    That the Defendants are aware the consumers rely on its representations regarding its

climbing tree stands safety when choosing whether or not to buy the Defendants' products.

38.    Because of the defective and unreasonably dangerous design and/or manufacture of the

API Crusader Climbing Tree Stand by the Defendants as previously alleged, the API Crusader tree

stand was not of merchantable quality, fit for the ordinary purpose for which it was sold, nor was it

fit for its intended purpose.

39.    That the defective and unreasonably dangerous condition of the subject API Crusader Climbing Tree Stand, as previously alleged, constituted a breach of the Defendants' express and implied warranties.

40.    As a direct and proximate result of the conduct, acts or omissions of the Defendants, the Plaintiff suffered injuries and damages as previously alleged in paragraphs 27 and 33.

41.    That the Plaintiff is afforded and believes he is entitled to a judgment against the Defendants in a sum sufficient to compensate him for his damages, both actual and punitive, in an amount to be determined by the trier of fact.

WHEREFORE, the Plaintiff prays for judgment against the Defendants on each of his causes of action for actual and punitive damages, for the costs of this action, and for such other and further relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED

KNIGHT & WHITTINGTON, LLC

BY: _____
DAVID W. WHITTINGTON
dwhittington@knightwhittington.com
Matthew T. Douglas
mdouglas@knightwhittington.com
207 East Third North Street
Summerville, SC 29483
P: (843) 821-9700
F: (843) 821-0031

BY: _____ by DWW
RUSSELL D. HILTON   with permission
russ@rhiltonlaw.com
104 South Pine Street
Summerville, SC 29483
P: (843) 376-5524

ATTORNEYS FOR PLAINTIFF

Summerville, South Carolina

Dated: November 8, 2017

9