**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Gene Victor Moore, | ) | Civil Action No. 2:17-cv-3228-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| BPS Direct, LLC, Bass Pro, LLC, Global | ) | |
| Manufacturing Company, LLC, G.M.C., | ) | |
| LLC, and Mainstream Holdings, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on six motions to exclude experts: Defendants' Motion to Exclude or Limit the Testimony of Jahan Rasty (Dkt. No. 78), Defendants' Motion to Exclude or Limit the Testimony of Stuart Michael Statler (Dkt. No. 79), Defendants' Motion to Exclude or Limit the Testimony of Jo Anna Vander Kolk (Dkt. No. 80), Defendants' Motion to Exclude or Limit the Testimony of Dr. Oliver G. Wood, Jr. (Dkt. No. 81), Plaintiff's Motion to Exclude or Limit the Testimony of Lorne Smith, Jr. (Dkt. No. 73) and Plaintiff's Motion to Exclude or Limit the Testimony of George M. Saunders (Dkt. No. 84). For the reasons set forth below, the Court grants in part and denies in part the motions.

## I. Background

This is a products liability case arising out an injury sustained by Plaintiff Gene Victor Moore allegedly from the use of an API Crusader Climbing Treestand ("Crusader Treestand") manufactured by Defendants Mainstream Holdings, Inc. and Global Manufacturing Company, LLC and sold by Defendants BPS Direct, LLC and Bass Pro, LLC. (Dkt. No. 53.) The Parties filed cross-motions for summary judgment. (Dkt. Nos. 76, 77, 82.) In conjunction with the summary judgment briefing, the Parties have filed these six *Daubert* motions to exclude or limit

the testimony of the Parties' experts. Each one has been fully briefed, with the opposing Party responding to the motion.

## II.  Legal Standard

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, even if a witness is "qualified as an expert by knowledge, skill, experience, training or education," the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b) – (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592 – 93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Factors to be considered include "whether a theory or technique…can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593 – 94. However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). This is especially true as the *Daubert* standard applies to non-scientific expert testimony as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

## III.  Discussion

### A.  Defendants' Motion to Exclude Jahan Rasty (Dkt. No. 78)

Defendants BPS Direct, LLC, Bass Pro, LLC, Global Manufacturing Company, LLC, G.M.C., LLC, and Mainstream Holdings, Inc. (collectively "Defendants") move to exclude, or in the alternative limit, the testimony of Jahan Rasty, Ph.D., P.E., Plaintiff's mechanical engineering expert. (Dkt. No. 78.) Defendants first argue that Dr. Rasty is not qualified to offer expert testimony as a mechanical engineer as he has no experience with the design and manufacture of treestands. (Dkt. No. 78-1 at 26.) Next, Defendants argue that Dr. Rasty's testing of the Crusader Treestand is unreliable as it was speculative and based on an "approximation." (*Id.* at 30 – 31.) Finally, Defendants also seek to preclude testimony on a variety of topics in which Dr. Rasty allegedly has no expert knowledge. (*Id.* at 19 – 20.) Plaintiff opposes the motion. (Dkt. No. 89.)

Dr. Rasty is clearly qualified as a mechanical engineering expert to opine on the Crusader Treestand and the effects of a hole created during the welding in the manufacturing process. Dr. Rasty is a tenured professor at Texas Tech University, is the program director of the Forensic Engineering Accident Investigation at Texas Tech, and holds a Ph.D. in mechanical engineering. (Dkt. No. 89-7.) He further has served as a forensic engineer for over thirty years. (*Id.*) Dr. Rasty's qualifications to provide similar testimony in products liability cases has been recognized by other courts. *See Garcia v. Wheelabrator Grp., Inc.*, No. 3:10-CV-1253-P, 2011 WL 13232701, at *2 (N.D. Tex. Nov. 3, 2011); *Ashford v. City of Galveston*, No. CIV.A. G-03-038, 2005 WL 5994181, at *1 (S.D. Tex. Nov. 9, 2005). Further, Dr. Rasty does not need experience consulting on the exact treestand at issue here to be qualified as an expert. *See Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) ("In a products liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.") (collecting cases); *Wilhelm v. Ameristep Corp.*, No. 7:15-CV-00362, 2018 WL 6272911, at *9 (W.D. Va.

Nov. 30, 2018) (declining to exclude mechanical engineer testifying regarding a treestand regardless of his lack of experience with treestands generally). Regardless, as acknowledged by Defendants, Dr. Rasty has previously reviewed and consulted on between six and twelve treestand cases, and therefore does have relevant experience about the product at issue. (Dkt. Nos. 78-1 at 12; 78-12 at 4; 89 at 10.)

Defendants next argue Dr. Rasty's opinion regarding the effects of a welding hole created during the manufacturing process and the reason for the Treestand's failure are speculative and based on an "approximation," and therefore not reliable under Rule 702 or *Daubert*. To begin with, Defendants spend much of their motion arguing that their engineering experts, including Dr. George Saunders who is also subject to a *Daubert* motion, opine that Dr. Rasty came to incorrect conclusions and used incorrect methods. Dr. Rasty, unsurprisingly, opines in a detailed rebuttal report that Dr. Saunders came to incorrect conclusions and used incorrect methods. (Dkt. No. 89-5.) The Court will not weigh the evidence, and instead these disagreements may be addressed through testimony and cross-examination.

Defendants next argue that Dr. Rasty's opinions regarding the effect of a hole created during the welding is speculative since he testified that his tests were an "approximation." However, while Dr. Rasty testified that his tests did not determine the "magnitude-wise" amount of energy necessary for the Crusader Treestand to fail with "a hundred percent accuracy," he explained that the test was a "comapri[son]" that was able to determine whether "the existence of a hole is a detriment" and reduces the amount of energy necessary for the Crusader Treestand to fail. (Dkt. No. 78-12 at 32.) Certainly, the level of precision is an acceptable topic for cross-examination, but the test was not an unreliable approximation. Further, as opposed to in *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244 (4th Cir. 1999), a case cited by Defendants, Dr. Rasty did not

opine that his explanation of the failure was not "no more likely than other available possibilities...." *Id.* at 251. Instead, Dr. Rasty was able to testify with a reasonable degree of scientific certainty that it was "[m]ore likely than not" that the hole "intensified the stresses due to the weight of Mr. Moore, and that is what caused the failure." (Dkt. No. 78-12 at 8.) Dr. Rasty is therefore both qualified to offer opinions regarding the Treestand and his opinions regarding the manufacturing defects and the effects of the hole created during the welding process are sufficiently reliable to be admissible under *Daubert* and Rule 702. The matters raised by the Defendants may be used during cross-examination, but Dr. Rasty's opinions regarding the manufacturing and design of the Crusader Treestand, and the reason for the Treestand's failure, are admissible.

Dr. Rasty, however, does offer opinions on which he is unqualified. First, Dr. Rasty opines that, had Plaintiff been wearing a harness at the time of the incident, he may have become suspended for an extended period of time and suffered "suspension trauma which can lead to death in as little as 30 minutes." (Dkt. No. 89-2 at 30.) Dr. Rasty is not a medical doctor and there is no indication he has any medical training, nor does he have any other expertise in "suspension related injuries." Dr. Rasty further acknowledged he is not an expert in suspension trauma or safety harness application. (Dkt. No. 78-12 at 7.) Dr. Rasty's is therefore precluded from testifying regarding Plaintiff's use of the safety harness and potential for injury, as discussed in Section 8.14 of his report.

Dr. Rasty's opinions regarding the applicability of OSHA standards and the sufficiency of certain warning labels on the Treestand also must be excluded. Regarding the OSHA labels, there is no indication that Dr. Rasty has any experience with OSHA safety standards or their application or otherwise any legal experience permitting him to opine on their applicability. Further, the

opinions are unreliable. Notably, Dr. Rasty relies on 29 C.F.R. § 1917.118, the OSHA standard for fixed ladders, to opine that the Treestand here should have had a factor of safety of 4. (Dkt. No. 89-2 at 25.) However, the OSHA regulation is clear that "[f]ixed ladder means a ladder, including individual rung ladders, permanently attached to a structure, building or piece of equipmen[,]" which clearly does not apply to a movable treestand. 29 C.F.R. § 1917.118(b)(2). Dr. Rasty's reliance on 29 CFR § 1926, regulations for scaffolding, is deficient for the same reasons. Therefore, Dr. Rasty's opinion in Section 8.10 on OSHA regulations and their relevance here are excluded.[1] (Dkt. No. 89-2 at 29.)

Finally, Dr. Rasty is not qualified to offer the opinions regarding the sufficiency of warnings contained in Section 5 of his rebuttal report. (Dkt. No. 89-5.) Dr. Rasty is a mechanical engineer, and while his CV demonstrates that he has extensive knowledge of engineering and structural analysis, including analyzing the cause of device failures, there is no indication he has any qualifications regarding the adequacy of warnings on equipment. (Dkt. No. 89-7.) *See Briley v. Wal-Mart Stores, Inc.*, No. 2:15-CV-439, 2018 WL 276368, at *8 (S.D. Tex. Jan. 3, 2018) (excluding Dr. Rasty's testimony regarding reasonableness of safety policies because nothing "in Dr. Rasty's experience or training…would qualify him as an expert on these issues: his specialized knowledge relates to mechanical engineering, not retail safety."); *Sittig v. Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610, 616 (W.D. La. 2001) (excluding engineers who would have, in part, testified regarding "inadequate warnings" because "neither has written warnings for ladders or conducted any research or inquiries into the area of ladder warnings."). Therefore, Dr. Rasty's opinion in Section 5 of his rebuttal report regarding the adequacy of warnings is also excluded.

---

[1] Dr. Rasty's opinions regarding the TMA and ASTM standards are not excluded as Dr. Rasty relied on the deposition of Defendant Global's chief operations officer, who testified that the Crusader Treestand was tested to meet those standards. (Dkt. Nos. 89-2 at 24; 89-10 at 44, 51.)

## B. Defendants' Motion to Exclude Stuart M. Statler (Dkt. No. 79)

Defendants move to exclude, or in the alternative limit, the testimony of Stuart Michael Statler, Plaintiff's expert regarding best practices for manufacturers and retailers of consumer products. (Dkt. No. 79.) While Defendants generally seek to exclude Statler from testifying regarding the "design and manufacture" of the Crusader Treestand (Dkt. No. 79-1 at 2), Statler does not seek to offer opinions specifically on these topics. Instead, Statler offers three overall opinions in his report: first, that Defendant Global did not follow best manufacturing and marketing practices to discover and prevent risks from the Crusader Treestand, relying on a handbook published by the Consumer Product Safety Commission ("CPSC"); second, that Defendant Global should have known about the risk from the Crusader Treestand based on a prior incident that was reported to the CPSC and Defendant Global involving a nearly identical treestand from a different manufacturer, and; third, that Defendants failed to take appropriate action in accordance with their own internal policies and federal regulations after knowledge of the prior failure. (Dkt. No. 95-1.) Defendants argue more briefly that Statler is not qualified to offer those opinions and, regardless, his opinions are based on an unreliable and self-made "conscientious[-ness]" standard. (Dkt. No. 79-1 at 9 –12, 17, 20.) Plaintiff opposes the motion. (Dkt. No. 95.)

Statler is clearly qualified to offer opinions regarding best practices and the appropriateness of the actions of the Defendants regarding the Crusader Treestand. (Dkt. No.95-1 at 1.) Statler served over seven years as a Commissioner on the CPSC, a regulatory agency responsible for the safety of consumer products in the United States, and previously served as a Special Assistant of the National Commission on Product Safety, a precursor to the CPSC. (Dkt. No. 95-6.) Statler holds a J.D. from Harvard Law School, and since leaving the CPSC in 1987 has served as a product safety and regulatory consultant. (*Id.*) While Defendants argue that Statler has no experience with

designing and manufacturing treestands, he is qualified here to offer testimony on best practices, and the appropriateness of the actions regarding consumer products, such as the widely sold Crusader Treestand at issue, and therefore, as with Dr. Rasty above, Statler's lack of experience with treestands in particular does not mandate his exclusion. Statler is qualified under Rule 702 and *Daubert*.

The Court also finds that many of his opinions are reliable. Defendants focus on the Statler's use of the phrase "conscientiousness" in his deposition and argue that this is a standard based on Statler's "own subjective opinion incapable of objective quantification." (Dkt. No. 79-1 at 9.) However, a review of Statler's testimony and report demonstrate this is not the case. Instead, Statler's opinion relies on two main sources, first, the CPSC published *Handbook and Standard for Manufacturing Safer Consumer Products* and the regulations applying the Consumer Protection Safety Act ("CPSA"), 15 U.S.C. § 2051, the law that constitutes and authorizes the CPSC. These are not merely subjective opinions, but instead are appropriate standards for someone with Statler's personal knowledge and experience to rely on. Indeed, similar arguments regarding Statler's testimony has been previously rejected by other courts. *See Franklin v. Home Depot U.S.A., Inc.*, No. 5:06CV00048, 2007 WL 8081421, at *5 (W.D. Va. June 15, 2007) ("Statler drew upon his considerable experience, in particular, his experience with the CPSC, in formulating his opinions. Statler also referenced industry trends and CPSC principles. For these reasons, the court concludes that Statler's report 'did not derive merely from speculation or subjective opinion[.]'") (citations omitted); *In re Stand 'N Seal, Prod. Liab. Litig.*, 636 F. Supp. 2d 1333, 1336 (N.D. Ga. 2009) (declining to exclude expert who relied on same CPSC handbook); *Rountree v. Ching Feng Blinds Indus. Co.*, No. 3:04 CV 112 JWS, 2008 WL 7811566, at *2 (D. Alaska June 17, 2008) ("As a former commissioner of the CPSC, Statler is in a position to comment generally

on the nature of safety standards. Specifically, he may have helpful knowledge of customs and practices pertaining to the development of safety standards.").[2]

However, as recognized by other courts reviewing Statler's testimony, he will be precluded from testifying regarding ultimate issues of law. While Federal Rule of Evidence 704 permits an expert to offer an opinion on an "ultimate issue," an expert is not permitted to "state[] a legal standard or draw[] a legal conclusion by applying law to the facts...." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). *See e.g., Priester v. Futuramic Tool & Eng'g Co.*, No. 2:14-CV-01108-DCN, 2017 WL 193577, at *4 (D.S.C. Jan. 18, 2017) (holding in contrast to testimony that determined defendant was "negligent" and was the "cause" of an explosion, testimony that Defendant "did not act to prevent" a potentially hazardous situation was permissible). Therefore, to the extent that Statler seeks to testify that Defendants owed a duty to Plaintiff, that Defendants failed to adequately warn, that Defendants knew or should have known about a defect, or that a failure to warn caused the failure at issue here, these are legal conclusions and are excluded. *See Rountree*, 2008 WL 7811566, at *2 ("To the extent that Statler concludes that WCMA owed a duty to Plaintiffs his testimony is not permitted. Similarly, Statler's suggestion that WCMA 'failed ... to adequately warn[,]' is a legal conclusion. Such conclusory statements regarding questions of law are inadmissible.").

---

[2] Defendants cite to cases where Statler's testimony has been excluded as unreliable, however Statler here does not seek to testify regarding the topics found impermissible in those other cases. Notably, Statler has previously been precluded from testifying regarding design defects in *Campos v. MTD Prod., Inc.*, No. 2:07-0029, 2009 WL 425012 (M.D. Tenn. Feb. 19, 2009), *Hayes v. MTD Prod., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007) and *Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127 (N.D. Ill. 2014). Yet here Statler does not seek to offer that type of testimony which is more appropriate for an engineer. Further, Statler will be precluded from offering an opinion on any ultimate issue of law.

Further, Statler is precluded from testifying regarding whether Defendants violated § 15(b) of the CPSA. Plaintiff has presented evidence demonstrating that this is a case regarding an allegedly defective product, not regarding whether an entire product line should have been recalled. Plaintiff's attempt to introduce information regarding violation of the CPSA based on a prior failure of a similar treestand and the purported civil penalties for failure to do so is irrelevant and unhelpful to a jury, especially as the CPSA offers no private right of action. *Compare In re Yamaha Motor Corp. Rhino ATV Prod. Liab. Litig.*, 816 F. Supp. 2d 442, 456 (W.D. Ky. 2011) ("Whether Yamaha violated the requirements of the CPSA is irrelevant. The CPSA provides no private right of action…and proof that Yamaha violated the CPSA would not advance any of the plaintiffs' claims against Yamaha. The plaintiffs in this case have alleged that the Yamaha Rhino was defectively designed. They have not alleged negligent recall or any other claims for which the reporting requirements of the CPSA might be relevant.") (citations omitted) *with In re Stand 'n Seal, Prod. Liab. Litig.*, No. 1:07 MD1804-TWT, 2009 WL 10682061, at *3 (N.D. Ga. June 22, 2009) (permitting testimony regarding CPSA when product recall was at issue). However, to be clear, Statler's experience with the CPSC is not irrelevant and he is permitted to testify, based on his experience at the CPSC and knowledge of CPSC published best practices, on the steps Defendants should have taken to learn of other incidents with similar treestands, whether failures of similar treestands would be relevant from a product safety perspective, and what actions Defendants should have taken in response to learning of product failures with similar equipment.

Finally, Defendants seek for the Court to exclude a variety of opinions which do not appear in Statler's report and which Statler acknowledged during his deposition that he has no opinion on. (Dkt. No. 79-1 at 11 – 12.) As there is no indication that Statler seeks to offer these opinions and the Court does not know exactly what opinions would be offered, the Court declines to

speculate or exclude the opinions. To the extent necessary, the Court will deal with the issue when they arise.

### C. Defendants' Motion to Exclude Jo Anna Vander Kolk (Dkt. No. 80)

Defendants move to exclude, or in the alternative limit, the testimony of Jo Anna Vander Kolk, Plaintiff's vocational expert. (Dkt. No. 80.) Defendants make two arguments: first, that Vander Kolk's testimony that Plaintiff will need to hire a replacement supervisor because of the effects of his injury is speculative, and; second, that Vander Kolk impermissibly relies on a welding instructor at a local technical college to determine the likely hourly rate for the supervisor. (Dkt. No. 80-1 at 19 – 20.) Plaintiff opposes the motion. (Dkt. No. 86.)

Vander Kolk has a Bachelor of Science in Secondary Education, a Masters of Education in Rehabilitation Counseling and is a Certified Rehabilitation Counselor. (Dkt. No. 86-6 at ¶ 4.)[3] She has also testified as a vocational expert in over 1,000 social security disability administrative hearings. (*Id.* at ¶ 7.) Therefore, in general, Vander Kolk has specialized knowledge and training sufficient to serve as a vocational expert.

Regarding the reliability of her opinions here, Defendants are misplaced in arguing that Vander Kolk merely relied on Plaintiff's testimony that he would like to hire a replacement. Instead, as detailed in her affidavit, Vander Kolk relied on medical records from Plaintiff's treating physician, including a Physical Capacities Evaluation filled out by Dr. Kestner, Plaintiff's treating orthopaedic surgeon, which specified limitations on standing, walking, lifting, in addition to other limitations. (Dkt. No. 86-6 at ¶¶ 30 – 39.) Vander Kolk uses other sources, including the

---

[3] The Court also notes that the Parties did not include Vander Kolk's report or rebuttal report as exhibits to their motions, and instead Plaintiff filed an affidavit purporting to compile Vander Kolk's opinions. (Dkt. No. 86-6.) The Court therefore relies on this affidavit and Vander Kolk's deposition (Dkt. No. 80-17) in assessing her proposed expert testimony.

Dictionary of Occupational Titles, a widely cited publication, to determine what jobs Plaintiff is limited to based on his limitations. Courts permit vocational experts to testify when relying on similar evidence. *See Garrett v. Albright*, No. 06-CV-0785, 2008 WL 795610, at *2 (W.D. Mo. Mar. 21, 2008) ("a vocational expert, relied on an interview and his review of several medical records in reaching his conclusions, and is not simply restating her own opinions. This testimony is relevant to establishing whether [plaintiff] can return to work, and, therefore, relevant to the damages she suffered." ); *J.B. by & through Bullock v. Missouri Baptist Hosp. of Sullivan*, No. 4:16CV01394 ERW, 2018 WL 398391, at *2 (E.D. Mo. Jan. 12, 2018) (permitting testimony of vocational expert who relied "on the admissible evidence of a medical doctor to form her opinion[.]"). The testimony is not speculative. Instead, Vander Kolk relies on medical records to determine that Plaintiff is limited in performing his job and will require a full-time supervisor to cover the portions of his position he is no longer able to perform.[4] As Plaintiff owns his own business, Vander Kolk opines that these added expenses would reduce his earnings. Defendants have their own vocational expert and, in both their briefing and Vander Kolk's deposition, identified pointed arguments regarding Vander Kolk's proposed expert testimony. Yet, these go to the factual basis and weight of Vander Kolk's opinions and therefore are more appropriate for cross-examination. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in

---

[4] Vander Kolk does not specifically opine that Plaintiff needs to stop working, but rather that while Plaintiff desires to keep working, a full-time replacement is required to prevent an earnings loss because of a need to reduce hours and the limitations mandated by his doctors. (Dkt. No. 86-6 at ¶¶ 54 – 56.)

cross-examination.") (citations omitted). Vander Kolk's reliance on interviews with Plaintiff, extensive medical records, and widely cited treatises, is reliable and therefore admissible.

Finally, Defendants argue that Vander Kolk's calculation of the hourly rate of the supervisor, $37, is unreliable as she relied solely on a conversation with Jim Stallsmith, a welding instructor at Trident Technical College. However, in addition to talking with Stallsmith, Vander Kolk relied on Plaintiff's hourly rate, and related hourly rates from the Bureau of Labor Statistics. (Dkt. No, 86-6 at ¶¶ 44 – 46, 83.) Again, Defendants arguments go to weight and factual support, and therefore are properly addressed through cross-examination. The motion to exclude Vander Kolk is denied.

### D. Defendants' Motion to Exclude Dr. Oliver G. Wood, Jr. (Dkt. No. 81)

Defendants move to exclude, or in the alternative limit, the testimony of Dr. Oliver G. Wood, Plaintiff's damages expert. (Dkt. No. 80.) While Dr. Wood offers a variety of opinions regarding economic loss, Defendants focus solely on Dr. Wood's calculations for future wage loss, which relies on Vander Kolk's opinion that Plaintiff will have to hire a supervisor at $37 per hour. (Dkt. No. 81-1 at 2, 20.) Defendants argue almost exclusively that Dr. Wood's opinions regarding the economic loss should be excluded because his "opinions and calculations are based on Ms. Vander Kolk's opinions," which Defendants contend are "based on subjective beliefs" and "whose reliability is not documented." (*Id.* at 20.) As discussed above, Defendants' motion to exclude Vander Kolk's opinion and testimony is denied, and Dr. Wood is permitted to rely on Vander Kolk's opinion to form his opinions. *See Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 843 (S.D.W.Va. 2018) ("an expert may rely upon the work of other individuals in his or her field, as well as the testimony of a lay witness.") (collecting cases); *Evans v. Quintiles Transnational Corp.*, No. 4:13-CV-00987-RBH, 2015 WL 9455580, at *6 (D.S.C. Dec. 23, 2015)

(permitting Dr. Wood's opinions relying on opinions of vocational expert). As above, these issues can be highlighted through cross-examination.

However, Dr. Wood does proffer one opinion for which he seems to have no basis and is therefore unreliable. Dr. Wood opines, with specificity, that Plaintiff's post-trial earning capacity loss will be $1,298,690, seemingly multiplying $37 per hour for the supervisor by 2000 hours to reach a yearly rate of $74,000, and then multiplying that yearly rate through Plaintiff's age 70 year, when he purportedly intends to retire. However, Vander Kolk testified that she "cannot specify th[e] time" when Plaintiff is going to hire someone. (Dkt. No. 80-17 at 25.) Further, Dr. Wood began his calculation for post-trial damages on February 4, 2019, approximately six months prior the current date of trial. (Dkt. No. 81-18 at 8.) The full figure, $1,298,690, which is premised on an immediate start date, is therefore purely speculative and not based on any facts or evidence in the record or elsewhere and the Court will exclude it as unreliable. However, Dr. Wood may properly testify to the yearly cost of a hiring a supervisor, $74,000, as Vander Kolk clearly opined that Plaintiff would need to hire a supervisor, likely at $37 per hour. Dr. Wood's proposed testimony is otherwise permissible and any alleged issues may be highlighted through cross examination.

**E. Plaintiff's Motion to Exclude Lorne Smith, Jr. (Dkt. No. 73)**

Plaintiff seeks to exclude, or in the alternative limit, the testimony of Lorne Smith, Jr., Defendant's hunting expert. (Dkt. No. 73.) Smith seeks to offer opinions on Plaintiff's use (or alleged misuse) of the Crusader Treestand, whether there was anything "wrong" with the Treestand, other incidents involving similar treestands, that the tree Plaintiff used was inappropriate for the treestand, and that Plaintiff should not have used the Crusader Treestand

given a medical condition. (Dkt. No. 73-1.) Plaintiff also seeks to exclude the opinions as cumulative. (*Id.*) Defendants oppose the motion. (Dkt. No. 93.)

Smith is qualified as an expert in hunting safety and treestand use. Smith has served as an investigator, consultant and expert witness in hunting and treestand related cases since 1985. (Dkt. No. 73-6.) He has served as a president of the Hunter Education Association, helped develop a Hunter Education Manual in use in multiple states, has previously taught courses in hunter accident investigations, is certified as a treestand safety instructor by the Treestand Manufacturer Association ("TMA"), and is a voting member of the ASTM committee which oversee the safety standards for treestands. (*Id.*) He has further investigated over 500 hunting accidents involving treestands. (Dkt. No. 73-4 at 3.) He is therefore qualified to offer opinions based on this knowledge of hunting and hunting safety. As the opinions would be based on his extensive personal experience and training, the opinions are also sufficiently reliable to be admissible. *See Phipps v. Mainstream Holdings, Inc.*, No. 6:16-CV-03134-BCW, 2017 WL 6383977, at *5 (W.D. Mo. July 13, 2017) (permitting Smith to testify about accident reconstruction and hunter safety and finding the opinions are reliable based on his thirty-five years experience); *Bradley v. Ameristep, Inc.*, No. 1:12-CV-01196, 2014 WL 6474913, at *3 (W.D. Tenn. Apr. 14, 2014) (permitting Smith's testimony on sufficiency of treestand warnings). Smith may therefore opine on proper safety when using the treestand, Plaintiff's use of the treestand, the appropriateness of Plaintiff's actions in relation to the warnings, and other issues related to hunter safety. This includes Plaintiff's choice of tree on which to use the treestand, and whether Plaintiff can safely use a treestand while impaired.[5] Smith's testimony on these issues is further not cumulative, rather

---

[5] Smith is not qualified to opine on any medical issues as there is no indication he has any medical training or experience. However, he may opine on whether a hunter, such as Plaintiff, can safely use a treestand based on specific medical conditions or side effects from medication when relying

while other experts opine on defects, engineering and medical conditions, Smith's testimony is instead focused on hunter safety and Plaintiff's use of the Crusader Treestand. The testimony, at times, relies on other experts, but it will be independently helpful to the jury.

Further, to the extent testimony regarding other incidents involving similar treestands are admitted at trial, Smith will be permitted to opine on those individual treestand failures. Smith, in his report, explains that the six claims he opines on were "claims that [he]...worked on or [had] seen." (Dkt. No. 73-4 at 24.) The past investigation and inspection of the treestands in those other cases is a sufficiently reliable method to be admissible. *See Bradley v. Ameristep, Inc.*, No. 1:12-CV-01196, 2014 WL 6474913, at *2 (W.D. Tenn. Apr. 14, 2014) (permitting opinion on causation based on Smith's "visual inspection"). Plaintiff's motion also implicates basic issues of fairness: to the extent Plaintiff admits evidence of any other treestand failure, Defendants are permitted to rebut that evidence, including by offering their explanation of why those treestands failed. As with Smith's opinions on the Treestand's failure here and Plaintiff's proper use and safety, the factual basis of his opinions can be addressed through cross-examination.

However, Smith also opines on whether the Crusader Treestand at issue, and the treestands used in similar instances, were defective, and states that "[t]here was nothing wrong with this stand when it was sold to Mr. Moore." Smith is not an engineer and has not performed any studies or tests to provide a basis to opine on whether the treestands were defective. Therefore, Smith cannot opine on whether the Crusader Treestand, or the treestands used in similar instances, are defective. *See Phipps*, 2017 WL 6383977, at *4 ("Smith does not have the requisite training and/or experience to opine that on the ultimate issue of whether the Bravada [treestand] is defective or

---

on facts or data permissible under Rule 703, which would include the Plaintiff's own testimony and medical records.

not."). Further, the testimony regarding defects must be excluded as cumulative as it is duplicative of the testimony of Dr. Saunders.

**F. Defendants' Motion to Exclude George M. Saunders, Jr. (Dkt. No. 84)**

Finally, Plaintiff moves to exclude, or in the alternative limit, the testimony of George M. Saunders, Jr. P.E., C.F.E.I, Defendants' mechanical engineering expert. (Dkt. No. 84.) Saunders, who holds both an undergraduate and graduate degree in mechanical engineering and has worked as an engineer for over twenty-five years, inspected the Crusader Treestand at issue and conducted a finite element analysis to analyze and compare it to the strength of the Treestand with and without the melted welding hole. (Dkt. No. 84-4.) He conducted four tests, including static and dynamic load tests, and his results are reported in detail. (*Id.* at 31 – 32.) Saunders also offers various opinions regarding use of a safety harness, Plaintiff's compliance with safety standards, the warnings on the Treestand, Plaintiff's understanding of the risks of using the Treestand, the condition of the tree chosen for the Treestand, the potential for medical injury, and a review of other incidents regarding similar treestands. Defendants oppose the motion. (Dkt. No. 92.)

Plaintiff initially argues that Saunders should be excluded because of Defendants' alleged discovery violations. (Dkt. No. 84-1 at 7 – 8.) For the reasons set forth in the Order on the Plaintiff's Motion for Sanctions and to Exclude, which makes the same arguments, Saunders' testimony is not excluded. Plaintiff next extensively argues that Saunders' opinions are unreliable as his tests did not use the proper methodology and were not analyzed correctly. (*Id.* at 10.) Plaintiff's motion, however, focuses on a detailed attack on the factual basis for Saunders' finite element analysis and conclusions. However, as made clear in Plaintiff's motion, Saunders' report and Defendants' opposition, Saunders' opinions are based on underlying facts in the record and apply accepted methodology. Plaintiff clearly believes Saunders reached incorrect conclusions,

relying in large part on the opinions of their own expert. Yet, as with many other experts in this case, these issues go to credibility and weight, not admissibility. *See Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 1191224, at *8 (S.D. Ill. Mar. 31, 2017) ("These matters go to the weight and/or credibility the Court should give Mr. Saunders' opinions, not to their admissibility. However, the plaintiff is free to cross examine Mr. Saunders on why he feels the opinions are incorrect."). Saunders' testimony regarding the manufacturing and design of the Crusader Treestand, and the reason for the Treestand's failure, is therefore admissible.

Saunders is further permitted to testify regarding whether a different use of the tether and fall arrest system would have prevented Plaintiff's fall. Saunders opines, in part, that had Plaintiff's harness been connected or had the tether been connected between the seat section and foot section, Plaintiff would have been caught before contacting the platform or, at least, the foot platform would have fallen a shorter distance, thus minimizing the force applied when Plaintiff fell. (Dkt. 84-4 at 48, 56.) These are opinions based on measurements and testing of the Treestand and therefore are admissible. As a member of the ASTM committee that reviews treestand safety standards and as an individual involved in over 200 treestand failure investigations, Saunders is further qualified to opine on the warnings provided with the Crusader Treestand and intended use of the Crusader Treestand. As a tree is a structural component of treestand use, Saunders may also opine on whether the chosen tree affected the Treestand's failure.

However, while Saunders is an expert in mechanical engineering and safe product design, he also offers opinions in his report and deposition for which he is not qualified. While Saunders may testify regarding the design and safe use of the Treestand based on engineering principles, including regarding use of a safety harness and connector rope, there is no indication that Saunders has any expertise to allow him to opine as a hunting expert or a hunting safety expert. Therefore,

Saunders may not opine on the appropriateness of Plaintiff's actions or proper hunting safety techniques.[6] Plaintiff further has no medical training, and therefore any of his opinions regarding suspension trauma or other medical injury are excluded.

Finally, Saunders may not testify regarding other incidents involving similar treestands, contained in Appendix D to his report. (Dkt. No. 84-11.) The opinions are unreliable as Saunders cannot opine with a reasonable degree of scientific certainty. Instead, in a representative sample, Saunders opines that his opinions are based on a "logical engineering conclusion" but "[w]ithout more information, it is not possible to ascertain the definitive cause of the failure or how it may relate to the subject incident." (*Id.*) Saunders uses similar imprecise language elsewhere, such as "presumably indicating" and "more probable scenario…." (*Id.*) Saunders further acknowledged that he was not able to "reach a root cause" for each of the other incidents. (Dkt. No. 84-5 at 21.) The unreliability is further supported by the fact that Saunders relied on discovery documents to reach many of his conclusions, as opposed to the in-depth inspection and testing Saunders applied to the Crusader Treestand at issue here, indicating that he did not apply accepted methodology to reach his imprecise conclusions.[7] Saunders' conclusions on these other incidents is therefore speculative, not stated with a reasonable degree of scientific certainty, and not based on accepted methodology and therefore is excluded.

## IV. Conclusion

For the foregoing reasons, Defendants Motion to Exclude, or in the Alternative Limit, the Testimony of Jahan Rasty, Ph.D., P.E. (Dkt. No. 78) is **GRANTED IN PART** and **DENIED IN**

---

[6] Nonetheless, Defendants have proffered an expert who can offer this testimony, Lorne Smith.

[7] Regarding one of the claims, the Alexander claim, Defendants represent that Saunders investigated the claim. (Dkt. No. 92 at 27.) Again, however, there is no indication that Saunders is able to testify to a reasonable degree of scientific certainty regarding the claim.

PART. The Motion is **GRANTED** and the Court **EXCLUDES** testimony from Dr. Rasty regarding suspension trauma, application of OSHA standards, or the sufficiency of warnings. The Motion is otherwise **DENIED**.

Defendants Motion to Exclude, or in the Alternative Limit, the Testimony of Stuart Michael Statler (Dkt. No. 79) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** and the Court **EXCLUDES** testimony from Stuart Michael Statler regarding ultimate issues of law and whether the Defendants violated the CPSA. The Motion is otherwise **DENIED**.

Defendants Motion to Exclude, or in the Alternative Limit, the Testimony of Jo Anna Vander Kolk (Dkt. No. 80) is **DENIED**.

Defendants Motion to Exclude, or in the Alternative Limit, the Testimony of Dr. Oliver G. Wood, Jr. (Dkt. No. 81) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** and the Court **EXCLUDES** testimony from Dr. Oliver G. Wood, Jr. regarding the full figure of post-trial earning capacity loss, though Dr. Wood may opine on the yearly cost of hiring a supervisor. The Motion is otherwise **DENIED**.

Plaintiff's Motion to Exclude, or in the Alternative Limit, the Testimony of Lorne Smith, Jr. (Dkt. No. 73) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** and the Court **EXCLUDES** testimony from Lorne Smith, Jr. regarding whether the Crusader Treestand, or the treestands used in similar incidents, were defective. The Motion is otherwise **DENIED**.

Plaintiff's Motion to Exclude, or in the Alternative Limit, the Testimony George M. Saunders, Jr. (Dkt. No. 84) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** and the Court **EXCLUDES** testimony from George M. Saunders, Jr. regarding appropriateness of Plaintiff's actions when using the Treestand, other issues of hunter safety,

suspension trauma or other medical topics, and testimony regarding other incidents involving similar treestands. The Motion is otherwise **DENIED**.[8]

    **AND IT IS SO ORDERED.**

                                         Richard Mark Gergel
                                         United States District Court Judge

July 8, 2019
Charleston, South Carolina

---

[8] This case has been consolidated with Case No. 2:18-cv-3017-RMG. A number of the motions at issue here were cross-filed in that consolidated action. This order also disposes of those motions. (Dkt. Nos. 39, 40, 41, 42 in Case No. 2:18-cv-3017.)

-21-