# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Gene Victor Moore, | ) | Civil Action No. 2:17-cv-3228-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| BPS Direct, LLC, Bass Pro, LLC, Global Manufacturing Company, LLC, G.M.C., LLC, and Mainstream Holdings, Inc., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiff's motion for sanctions and to exclude Defendant's expert George Saunders, Jr. (Dkt. No. 75.) For the reasons set forth below, Plaintiff's motion is denied.

## I. Background

This is a products liability case arising out of an injury sustained by Plaintiff Gene Victor Moore allegedly from the use of an API Crusader Climbing Treestand ("Crusader Treestand") manufactured by Defendants Mainstream Holdings, Inc. and Global Manufacturing Company, LLC and sold by Defendants BPS Direct, LLC and Bass Pro, LLC. (Dkt. No. 53.) Plaintiff now moves for sanctions and exclusion of Defendants' mechanical engineering expert George Saunders, Jr. based on Defendants' alleged failure to timely produce design documents and a computer-aided electronic design model ("CAD model") that had previously been requested and subject to Court orders on motions to compel. (Dkt. No. 75.) Plaintiff argues that exclusion is particularly appropriate as the design documents were not produced until one week before Saunders' deposition on February 6, 2019, and the CAD model was not produced until after the deposition on February 20, 2019. (*Id.*) Plaintiff also alleges that documents regarding other similar incidents involving the failure of the Crusader Treestand have been improperly withheld by the

Defendants. (*Id.* at 21.) Defendants allege that they timely produced any design documents in their possession, and the late disclosure of the design drawings and the CAD model is based solely on the fact that these documents did not exist until "shortly before" Saunders' deposition on February 13, 2019. (Dkt. No. 91 at 18.)[1]

**II.   Legal Standard**

Rule 37 of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The required information under Rule 26(a) and (e) includes both the disclosure of an expert report, including the "facts or data" considered by the expert witness, and any supplemental information responsive to an interrogatory, request for production or request for admission. Fed. R. Civ. P. 26(a), (e). "[T]he basic purpose of Rule 37(c)(1) [is] preventing surprise and prejudice to the opposing party." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Thus, the district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. *Id.* at 597. "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the

---

[1] Defendants state the deposition occurred in 2018. However, Plaintiff states the deposition took place on February 13, 2019 and Saunders' deposition transcript is dated as such. (Dkt. No. 75-6.)

importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.*

## III. Discussion

"A party is only required to produce documents that are already in existence." *Wade v. Chase Bank USA, N.A.*, No. 2:12-CV-3565-RMG, 2013 WL 12154986, at *3 (D.S.C. Nov. 7, 2013). It is axiomatic that a party cannot be ordered to produce documents that do not exist. *See Id.*; *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *4 (D.S.C. Jan. 26, 2018). While Plaintiff cites extensive testimony from Saunders, the testimony uniformly states that Saunders requested the information contained in the design drawings and CAD models, and only later were they ultimately created and produced to Saunders and Plaintiff. (Dkt. No. 75 at 5 – 9; Dkt. No. 75-6 at 12 -- 16, "So I asked for them to create this, and eventually it was created and provided to you, provided to me. ..."; "these are created from a solid model somewhere....").

Given its lack of existence at the time of the requests, Defendants were under no duty to produce the design drawings or CAD models at the time. Further, even if it was possible to generate these drawings and models, as it clearly was, Defendants were under no duty to create the drawings and models solely to respond to a document request. *See Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000) ("A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production.") (citations omitted); *Legg v. Rhodes*, No. CA 4:12-811-RMG-SVH, 2012 WL 5193702, at *1 (D.S.C. Oct. 19, 2012) (party not required to create documents to respond to document request). Therefore, Defendants production of the design drawings and CAD models, while discovery was still open and shortly after their creation, complies with the requirements of Rule 26.

Plaintiff also argues that it was prejudiced by the failure to provide the design drawings and CAD models until February 2019. In this respect, it is important to address the design drawings and CAD models separately:

Regarding the design drawings, Plaintiff first argues that because of the failure to provide the documents, it could not properly secure Saunders' testimony on the topics during his deposition. However, Saunders' expert report reveals that he did not list the supplemental productions as documents on which he relied in reaching his conclusions. (Dkt. No. 75-10 at 3 – 6.) Further, Saunders testified that, while he reviewed the drawings once he received them, he did not rely on the documents in forming his opinions as he "completed [his] finite element analysis before I ultimately received that information." (Dkt. No. 91-7 at 77.) Most importantly, the design drawings were produced on February 6, 2019, a week before Saunders' deposition, and therefore Plaintiff received the documents far enough in advance to ask Saunders questions regarding the drawings. Second, Plaintiff argues that his engineering expert, Dr. Jahan Rasty, was not able to review the documents, which may have been beneficial prior to issuing his opinion. However, Defendants' expert was also not able to rely on the documents in his report, which was issued on January 16, 2018 and, again, the documents did not previously exist. Notably, Dr. Rasty produced a rebuttal report on February 12, 2019, six days after the updated drawings were produced, and therefore Dr. Rasty had the ability to update his opinions based on the drawings if he found it necessary. (Dkt. No. 96-7.) Therefore, there is no reason to exclude the design drawings.

Regarding the CAD models, it is clear that Saunders did not have access to, or rely on, the models when producing either his report or opining during his deposition. As opposed to the drawings, where Saunders acknowledged reviewing them after completing his work, when asked about whether he knew where the CAD models were kept, he stated, "For certain, no. My guess

would be in China with the actual manufacturer of the product." (Dkt. No. 76-6 at 15 – 16.) As Saunders did not rely on the CAD models, there is no basis to exclude his report. Plaintiff also argues that the CAD models contain necessary not-previously disclosed data regarding the design of the Treestand, which is purportedly important for determining whether the Treestand was defectively manufactured. (Dkt. No. 75 at 13; 98 at 2.) Specifically, Plaintiff argues that the models contain information that the thickness of the foot section is intended to be 1.408 mm, which differs from the measurements on Plaintiff's Treestand. (Dkt. No. 75-1 at 13.) However, as noted by Defendants, the drawings originally produced in March 2018 included substantially similar information and identified the thickness of the foot sections as 1.4 mm.[2] Therefore, Plaintiff had access to this allegedly necessary information regardless of the late disclosure.[3]

Finally, Plaintiff argues that Defendants should turn over documents regarding other similar treestand failures regarding treestands previously manufactured by non-party Worldwide

---

[2] *See* GMC 105. The information is contained in a small diagram on the bottom right of Bates Stamped document GMC 105. Both Parties agree that GMC 104 – 106 were the originally produced design drawings, and that GMC 104Supp – 106Supp are the documents produced later in February 2019. (Dkt. No. 75-1 at 3 – 4; 91 at 5 – 6.) The Court therefore relies on the Bates numbers included on design drawings submitted to the Court *in camera* instead of the exhibit letters, which appear to be inaccurately swapped.

[3] In its Reply, Plaintiff identifies a heel cord hole contained on the CAD model not included in the prior design drawings and for the first time seeks an order that the Defendants must produce the "raw data" used to compile the CAD model. (Dkt. No. 98 at 6.) Plaintiff may not make a new motion or a new argument in Reply not raised in its initial motion as Defendants have not had an opportunity to respond. Further, elsewhere, Plaintiff represented that the CAD model contains "all corresponding data, measurements, specifications, etc." that they seem to now seek by Court order. (Dkt. No. 75-1 at 4.) Therefore, a Court Order for the underlying data is unnecessary as the information has already been provided. Further, the Crusader Treestand used by Plaintiff here did not have a heel cord hole in the intended design, so the relevance the CAD model also seems to be more limited than other designs. (Dkt. No. 91-2 at 60.) Finally, Dr. Rasty focuses on the fact that the absence of the CAD model made certain calculations more difficult, yet, as noted above, this was equally true for Saunders and provides no basis to exclude the report. (Dkt. No. 75-11.) Therefore, to the extent Plaintiff believes the inclusion of the hole in the design or any other information in the CAD model is important, they can pursue the issue on cross examination.

Industrial Corp ("WIC") as Defendants Global and Mainstream allegedly have "control" over documents retained by WIC. (Dkt. No. 75 at 21.) However, the undisputed record evidence demonstrates that while WIC previously was a company related to BGHA, another hunting gear manufacturer owned by the same parent company as Defendant Global, it has disassociated from BGHA as of 2013, long before this case began. (Dkt. No. 91-2 at 15.) While Defendant focuses on the former corporate relationship between the companies, the test for access to evidence is whether a party has documents in their "possession, custody or control." Fed. R. Civ. P. 34. As of the date of the document requests, as an entirely separate entity, the Defendants cannot be said to have "control" over any documents from WIC, and instead the proper vehicle to secure any relevant documents from WIC would have been a third-party subpoena under Rule 45.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion for sanctions and to exclude Defendant's expert George Saunders, Jr. (Dkt. No. 75) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July __, 2019
Charleston, South Carolina