IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Gene Victor Moore,<br><br>Plaintiff,<br><br>v.<br><br>BPS Direct, LLC, Bass Pro, LLC, Global Manufacturing Company, LLC, G.M.C., LLC, and Mainstream Holdings, Inc.,<br><br>Defendants. | Civil Action No. 2:17-3228-RMG<br>(Consolidated with 2:18-cv-3017-RMG)<br><br>**ORDER AND OPINION** |

Before the Court is Plaintiff's motion to compel supplemental discovery responses regarding Defendants' financial condition. (Dkt. No. 83.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

I. **Background**

This is a product liability case arising out of an injury sustained by Plaintiff Gene Victor Moore allegedly from use of an API Crusader Climbing Treestand ("Crusader Treestand") manufactured by Defendants Mainstream Holdings, Inc. and Global Manufacturing Company, LLC and sold by Defendants BPS Direct, LLC and Bass Pro, LLC ("Bass Pro Defendants"). (Dkt. No. 53.) Plaintiff now seeks an order compelling Defendants to provide all financial statements and tax returns for all Defendants from 2014 through 2017.[1] The motion is a renewed motion to compel, previously filed as Docket Number 31, which the Court denied without prejudice pending a determination that Plaintiff has made a prima facie showing that he is entitled to punitive

---

[1] As to each Defendant, this is in response to: First, for the Bass Pro Defendants, Plaintiff's Second Set of Requests for Production No. 5; Second, for Defendant Global, Plaintiff's Second Set of Requests for Production No. 7; Third, for Defendant Mainstream, Plaintiff's First Request for Production No. 19.

damages. (Dkt. No. 46.) Plaintiff has renewed the motion, arguing that he has made out a prima facie case and a dispute of material fact regarding liability and an entitlement to punitive damages. (Dkt. No. 83.) Defendants oppose the motion. (Dkt. No. 90.)

## II. Legal Standard

Parties to a civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop her case. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) (noting that "the discovery rules are given 'a broad and liberal treatment'") *quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The court "must limit the frequency or extent of discovery...if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them].") (internal quotation marks omitted). To enforce the provisions of Rule 26, under Federal Rule of Civil Procedure 37, a "party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## III. Discussion

In the first instance, the Parties, cognizant that the availability of punitive damages ultimately is affected by whether Plaintiff's claims can survive summary judgment, dedicate significant portions of their briefing to argue the merits of Plaintiff's claims. As the Court has held

in recently issued orders, Plaintiff's claims for strict liability as to manufacturing defects survives against Defendants Global and Mainstream, and Plaintiffs remaining three claims, for negligence, breach of warranty, and under the South Carolina Unfair Trade Practices Act ("SCUTPA") survive as to all parties. (Dkt. Nos. 149, 150.)

However, for the purpose of discovery, the documents related to Defendants' financial condition only become relevant if Plaintiff's claim for punitive damages is viable. *See, e.g. Nix v. Holbrook*, No. CIV.A. 5:13-02173, 2015 WL 791213, at *3 (D.S.C. Feb. 25, 2015) ("the court declines at this time to require production of sensitive financial documents until after Plaintiff has established the viability of his claim for punitive damages.") (collecting cases). In the first instance, the Court notes that punitive damages are not available under South Carolina law for the breach of warranty claims. *See Rhodes v. McDonald*, 345 S.C. 500, 504, 548 S.E.2d 220, 222 (Ct. App. 2001) ("Had the legislature intended that punitive damages be available in breach of warranty cases, they could easily have included a provision providing for the recovery of damages of that kind."). Further, under the SCUTPA, the statute itself controls the damages available, and provides that a court may award treble damages for a "willful or knowing violation" of the SCUTPA. *See Smith v. Strickland*, 314 S.C. 192, 197, 442 S.E.2d 207, 210 (Ct. App. 1994) (holding that "trebled damages" are "punitive in nature"). Therefore, under the SCUTPA, as the amount of damages for a willful or knowing violation is circumscribed by the statute, the financial condition of Defendants is not relevant under the SCUTPA.

Therefore, the sole question is whether Plaintiff can make a prima facie showing of entitlement to punitive damages for his tort claims under Illinois law. *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S. Ct. 2909, 2921–22, 106 L. Ed. 2d 219 (1989) ("In a diversity action, or in any other lawsuit where state law provides the basis of

decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law.")[2] Regarding punitive damages in products liability cases under Illinois law:

> [P]unitive damages may be awarded when the defendant acted 'with fraud, actual malice, deliberate violence or oppression, or when the defendant act[ed] willfully, or with such gross negligence as to indicate a wanton disregard for the rights of others.'… 'A defendant is guilty of willful and wanton conduct when he demonstrates knowledge that his conduct poses an increased risk of serious physical harm to another.' In the product liability context, punitive damages are appropriate if 'the manufacturer's conduct evinced a flagrant disregard for public safety.'

*Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1187–88 (7th Cir. 1992) (citations omitted).

At this stage, Plaintiff has clearly made a sufficient prima facie showing to submit the issue of punitive damages as to Defendants Global and Mainstream to the jury. As the Court already held, it is undisputed that the Crusader Treestand here had a small "burn hole," and that this was known by the manufacturers as a common by-product of welding. (Dkt. Nos. 77-1 at 14; 77-10 at ¶ 17; 77-3 at 60.) Further, Plaintiff identified at least one prior incident, Vandermast, demonstrating that Defendants Global and Mainstream knew that a similar, though not identical, Crusader Treestand split at a planned heel cord hole in the foot section.[3] (Dkt. Nos. 77-3 at 15 – 18; 77-14 at 27; 96-19.) *See Barton v. Chicago & N. W. Transp. Co.*, 325 Ill. App. 3d 1005, 1031, 757 N.E.2d 533, 555 (2001) (permitting jury instruction on punitive damages where evidence of

---

[2] Nonetheless, the Court applies Federal procedural rules, namely Federal Rule of Civil Procedure 56, to determine whether Plaintiff has presented sufficient evidence to submit punitive damages to the jury. *See Hoskins v. King*, 676 F. Supp. 2d 441, 450 (D.S.C. 2009) ("The Fourth Circuit has repeatedly held that in diversity cases, the federal standard controls the question of the sufficiency of evidence to go to the jury.") *citing Charleston Area Med. Ctr., Inc. v. Blue Cross & Blue Shield Mut. of Ohio, Inc.*, 6 F.3d 243, 247 (4th Cir. 1993).

[3] As addressed in the Court's Order on summary judgment (Dkt. No. 150 at 15 – 16), the fact that the Crusader Treestand at issue in the Vandermast case was manufactured in 2013 by a different manufacturer, Worldwide Industrial Corporation, does not negate the evidence's relevance where that same design ultimately was used in part to manufacture the Crusader Treestand here when the manufacturer for the API brand was changed to Defendant Global in 2014.

substantially similar occurrences (SSOs) was admitted at trial). These facts at least raise a prima facie case that Defendants Global and Mainstream had "knowledge that [their] conduct poses an increased risk of serious physical harm to another" and disregarded public safety issues. Therefore, Plaintiff is entitled to evidence of Defendant Global and Mainstream's financial condition.

Defendants attempt to argue that Defendant Mainstream is an "improper party" as it was only the holding company for Defendant Global and, since it did not take part in any of the manufacturing or sale of the Treestand, could not act with disregard for Plaintiff. (Dkt. No. 90 at 31.) To begin with, Defendants have not made a motion to dismiss Defendant Mainstream as an improper party. Regardless, the record evidence is clear that, although Defendant Mainstream is the parent company of Defendant Global, the two are inextricably intertwined. Todd Quiring is the sole shareholder of Defendant Mainstream and is also the owner of Defendant Global. (Dkt. No. 76-3 at 4.) Defendant Global also does not have "any employees that are specifically Global employees" and instead "the payroll is done through Mainstream holdings" where some "job duties cross over." (*Id.* at 9.) Indeed, Mainstream also provided the quality assurance policy applicable to the Crusader Treestand here and provides the customer support for the API Crusader Treestands, including for prior incidents of treestand failure such as the Vandermast claim, demonstrating that they had some knowledge of prior incidents. (Dkt. No. 83-23; 96-9.) There is further some evidence that the employees who ultimately do work for Global do so "as directed by Mainstream Holdings." (Dkt. No. 76-3 at 10.) Defendants reliance on the corporate distinction between Defendant Mainstream and Defendant Global is therefore misplaced. There is evidence of Mainstream's direct actions, through their customer service line and quality assurance program, permitting a prima facie case for punitive damages, as described above. Furthermore, as there is evidence that the employees ultimately working for Global are paid by Mainstream and ultimately

directed to work for Global by Mainstream, there is a dispute regarding whether Defendant Global was merely acting as an agent for Defendant Mainstream.[4]

However, Plaintiff has not presented any evidence that the Bass Pro Defendants are guilty of "willful and wanton conduct." Notably, Plaintiff's evidence regarding Bass Pro centers almost exclusively on them deferring to Defendant Global to manufacture, design and inspect the Treestand. There is also no evidence indicating that the Bass Pro Defendants had any knowledge of holes commonly occurring on Treestands through the welding process. Plaintiff, therefore, have not identified any evidence which would create a prima facie case as to whether the Bass Pro Defendants have the "knowledge" that their conduct surrounding the manufacture and sale of the Crusader Treestand posed "an increased risk of serious physical harm to another" or that they acted with flagrant disregard to public safety. Plaintiff has therefore not made out a prima facie case for punitive damages against the Bass Pro Defendants.

Plaintiff is therefore entitled to some information regarding Defendants Global and Mainstream's financial condition. However, Plaintiff's request for all financial statements and tax returns from 2014 through 2017 clearly contains irrelevant information, is overbroad and burdensome. To begin with, "a defendant's financial position is a proper consideration in assessing punitive damages[.]" *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004). However, as the purpose of punitive damages is to punish and deter, *Id.*, the most relevant inquiry

---

[4] Though Plaintiff's did not brief the issue, the exceptionally close nature of Defendants Mainstream and Global, most notably the dual role of Todd Quiring and the fact that all Defendant Global employees are employed and paid by Defendant Mainstream, raises an issue regarding whether Global can be treated as an alter ego of Mainstream. *See Gass v. Anna Hosp. Corp.*, 392 Ill. App. 3d 179, 185, 911 N.E.2d 1084, 1090 (2009) ("A subsidiary, as a separate and distinct legal entity, will be treated as the alter ego of the parent, and the corporate veil pierced, where the subsidiary is 'so organized and controlled, and its affairs so conducted by a parent, that observance of the fiction of separate identities would sanction a fraud or promote injustice under the circumstances.'").

is to a defendant's *current* financial status. *See Nix v. Holbrook*, No. CIV.A. 5:13-02173, 2015 WL 791213, at *3 (D.S.C. Feb. 25, 2015) ("Plaintiff...is entitled to discover STI's *current financial status* as it relates to the issue of punitive damages.") (emphasis added); *Hester v. Cottrell Contracting Corp.*, No. 7:00-CV-70-BR(1), 2001 WL 1764200, at *4 (E.D.N.C. Apr. 27, 2001) ("the court will limit the disclosure to Cottrell's current financial condition.").

Further, cognizant that Rule 26 requires weighing the importance of the discovery and its burden versus its benefit, the Court finds that requiring four years of *past* financial statements *and* state *and* federal tax returns is clearly excessive and burdensome. Instead, Plaintiff needs information sufficient to inform the jury of Defendant Global and Mainstream's "financial position." Therefore, the Court will Order Defendants Global and Mainstream to produce their current value and annual income for the most recent fiscal year. *See Hester*, 2001 WL 1764200, at *4 (ordering production of "current value and annual income for 2000").

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion to compel (Dkt. No. 83) is **GRANTED IN PART** and **DENIED IN PART. IT IS ORDERED THAT**, within ten (10) days of the date of this Order, Defendants Global and Mainstream will produce to Plaintiff their current value and annual income for the most recent fiscal year.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 9, 2019
Charleston, South Carolina